## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

GARY RAGLAND,     :
             :
     Plaintiff  :  No. 3:15-CV-1907
             :
  vs.       :  (Judge Nealon)
             :
CAROLYN W. COLVIN, Acting  :
Commissioner of Social Security, :
             :
     Defendant :

## MEMORANDUM

On October 1, 2015, Plaintiff, Gary Ragland, filed this instant appeal[1] under 42 U.S.C. § 405(g) for review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 1461, et seq. (Doc. 1). The parties have fully briefed the appeal. For the reasons set forth below, the decision of the Commissioner denying Plaintiff's application for DIB will be affirmed.

---

1. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

## BACKGROUND

Plaintiff protectively filed[2] his application for DIB on August 4, 2012, alleging disability beginning on November 29, 2011, due to a combination of sleep apnea, restless legs syndrome, blindness in his right eye, limited reading and writing skills, glaucoma, constant pain in his back and legs, and shortness of breath.  (Tr. 10, 140, 143).[3]  The claim was initially denied by the Bureau of Disability Determination ("BDD")[4] on March 28, 2013.  (Tr. 10).  On April 10, 2013, Plaintiff filed a written request for a hearing before an administrative law judge.  (Tr. 10).  A hearing was held on August 15, 2014, before administrative law judge Patrick Cutter, ("ALJ"), at which Plaintiff and an impartial vocational expert Paul Anderson, ("VE"),  testified.  (Tr. 10).  On August 29, 2014, the ALJ issued an unfavorable decision denying Plaintiff's application for DIB.  (Tr. 10). On October 22, 2014, Plaintiff filed a request for review with the Appeals Council.

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

3. References to "(Tr. _)" are to pages of the administrative record filed by Defendant as part of the Answer on December 21, 2015.  (Doc. 9).

4.  The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

(Tr. 6).  On August 21, 2015, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review.  (Tr. 1-3).  Thus, the ALJ's decision stood as the final decision of the Commissioner.

Plaintiff filed the instant complaint on October 1, 2015.  (Doc. 1).  On December 21, 2015, Defendant filed an answer and transcript from the SSA proceedings.  (Docs. 8 and 9).  Plaintiff filed a brief in support of his complaint on January 29, 2016.  (Doc. 11).  Defendant filed a brief in opposition on March 3, 2016.  (Doc. 15).  Plaintiff filed a reply brief on March 9, 2016.  (Doc. 16).

Plaintiff was born in the United States on October 30, 1961, and at all times relevant to this matter was considered an "individual closely approaching advanced age."[5]  (Tr. 140).  Plaintiff did not graduate from high school or obtain his GED, but can communicate in English.  (Tr. 142, 144).  His employment records indicate that he previously worked as a manufacturing assembler, laborer, and roofer.  (Tr. 145).

In a document entitled "Function Report - Adult" filed with the SSA on August 23, 2012,  Plaintiff indicated that he lived in a house with family.  (Tr.

---

5.  "Person closely approaching advanced age.  If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. § 404.1563(d).

158).   When asked how his injuries, illnesses, or conditions limited his ability to

work, Plaintiff stated, "have trouble standing or walking with legs, feet, trouble

breathing."   (Tr. 158).   From the time he woke up until he went to bed, Plaintiff

watched television.  (Tr. 159).   Plaintiff had no problems with personal care,

prepared meals such as sandwiches daily for five (5) minutes, did not perform

chores in his house or yard, and shopped for groceries when necessary for five (5)

minutes.  (Tr. 159-161).   He went outside two (2) times a week, was able to drive a

car, and was able to go out alone.  (Tr. 160).   His hobbies included watching

television, and he did not spend time with others.  (Tr. 162).   He could walk for

fifty (50) feet before needing to rest for five (5) minutes.  (Tr. 163).   When asked

to check what activities his illnesses, injuries, or conditions affected, Plaintiff did

<u>not</u> check squatting, bending, reaching, sitting, kneeling, talking, hearing, seeing,

memory, concentration, understanding, following instructions, using hands, or

getting along with others.  (Tr. 163).

Regarding his concentration and memory, Plaintiff did not need special

reminders to take care of his personal needs, take his medicine, or go places.  (Tr.

159, 162).   He could count change and handle a savings account, but could not pay

bills or use a checkbook due to trouble reading and keeping track of his

checkbook.  (Tr. 161).   He could not pay attention for long,  was not able to finish

4

what he started, did not follow written instructions well due to trouble reading and writing, followed spoken instructions "good," handled stress "fairly," and handled changes in routine "not very good."  (Tr. 163-164).

Plaintiff also completed a Supplemental Function Questionnaire for pain. (Tr. 166).  He stated that his pain began about five (5) years prior, and stated he had pain and burning sensation in his feet and legs.  (Tr. 166).  He stated standing and walking caused him to have pain, that his pain was worse at the end of the day and throughout the night, that it occurred every day, that it was not relieved by medication, and that he had never attended physical therapy.  (Tr. 166-167).

At the oral hearing on August 15, 2014, Plaintiff initially testified that what kept him from working were shortness of breath and pain in his legs.  (Tr. 31).  He stated that he was also blink in his right eye, had glaucoma, and smoked a pack of cigarettes a day.  (Tr. 32).  He testified that the pain in his legs and feet was a burning sensation that cause his legs to give out on him.  (Tr. 35-36).  He stated that he was able to drive a car, which he did about twice a week and did not need glasses to do.  (Tr. 32-34).  He testified that he was about to walk about twenty-five (25) feet before needing to rest to catch his breath and was able to stand up for ten (10) minutes before needing to sit because his legs and feet would swell.  (Tr. 37-38).

5

## MEDICAL RECORDS

Out of an abundance of caution, all medical records provided in the Transcript have been reviewed, even those past the date last insured of December 31, 2012.

On August 20, 2012, Paul Heavner, OD, wrote a letter that Plaintiff had not been seen in his office, Bergman Eye Associates, since October 2008.  (Tr. 190).

On September 24, 2012, Plaintiff underwent a consultative examination performed by Amatul Khalid, MD.  (Tr. 191).  It was noted that Plaintiff had left-eye glaucoma diagnosed one (1) year prior for which he had not been using the drops prescribed, did not have blurry or double vision, was blind in his right eye, self-diagnosed himself with sleep apnea because he woke up gasping for air, had burning in his feet, experienced shortness of breath with minimal activity, and could "only walk through Wal-Mart for a half an hour before having to sit."  (Tr. 191).  It was also noted that he smoked half a pack of cigarettes a day for the past thirty-five (35) years.  (Tr. 191).  His physical examination revealed the following: without glasses, his vision was 20/30; his bilateral lungs were clear to auscultation; a decreased range of motion in his lumbar spine; bilaterally increased deep tendon reflexes in his brachiradialis and knees; abnormal vibratory sensation that was impaired in his bilateral lower extremities from his ankle distally; and a

normal affect, judgment, and mental status.  (Tr. 192-194).  Plaintiff was assessed

as having peripheral neuropathy, glaucoma in his left eye with non-compliance

with his eye drops, legal blindness in his right eye, and tobacco abuse.  (Tr. 194).

Dr. Khalid opined Plaintiff: could frequently lift up to fifty (50) pounds and carry

up to ten (10) pounds; could stand for one (1) hour or less in an eight (8) hour

workday; had no limitations with sitting; could engage in unlimited pushing and

pulling within the aforementioned weight restrictions; could frequently bend, and

occasionally kneel, stoop, crouch, balance, and climb; had limitations with

reaching and seeing; and should avoid temperature extremes and humidity.  (Tr.

195-196).

On October 5, 2012, Plaintiff underwent an x-ray of his lumbar spine for

back pain.  (Tr. 199).  The impression was that there was no fracture or dislocation

seen in the lumbar spine.  (Tr. 199).

On November 27, 2012, Plaintiff had an appointment with Dr. Khalid for

another consultative examination.  (Tr. 200).  Dr. Khalid reiterated what was noted

during the first consultative examination, and added that Plaintiff had difficulty

with reading, some math problems, writing, spelling, and managing his finances.

(Tr. 200).  His physical examination remained the same except for wheezing, and

the assessment remained the same except for the addition of learning difficulties.

(Tr. 202).

On December 3, 2012, Plaintiff underwent a Pulmonary Function Test.  (Tr. 206).  The impression was that Plaintiff had a normal spirometry, lung volumes, and diffusing capacity.  (Tr. 206).  In the section "PFT Quality Assurance Statement," it was noted that Plaintiff had a good ability to understand directions, was alert and oriented, and gave good cooperation and effort.  (Tr. 215).

On February 28, 2013, Plaintiff underwent a Clinical Psychological Disability Evaluation with Individual Intellectual Evaluation and Achievement Test performed by Joseph Levenstein, Ph.D.  (Tr. 218).  Dr. Levenstein noted Plaintiff: was cooperative and rapport was easily established; had well-paced speech that was difficulty to understand; gave short answers to his questions; had a flexible affect appropriate to thought content; was unkempt; had a slightly unsteady gait; and was well motivated, but required moderate amounts of praise and encouragement to maintain motivation.  (Tr. 218).  His Mental Status Examination noted Plaintiff: was alert and oriented in three spheres; had intact appetite; was occasionally irritable; and denied symptoms of mania and OCD.  (Tr. 221).  His intelligence testing revealed "functioning ranging from the Average range to the Mild range of intellectual disability.  Overall, [Plaintiff] appears to be functioning within the Borderline range of intelligence."  (Tr. 221).  Dr. Levenstein also noted that Plaintiff had: extremely limited verbal skills, working memory, and processing; and limited information memory, academic skills, and

reading comprehension.  (Tr. 222).  Dr. Levenstein concluded that Plaintiff was

not functionally illiterate, could understand, retain, and follow simple instructions,

could sustain attention sufficiently to complete simple and repetitive tasks, had

social skills that were sufficient to interact appropriately with supervisors and

coworkers, and could perform activities of daily living on an independent basis

with the exception of reading and writing.  (Tr. 222).  Dr. Levenstein diagnosed

Plaintiff with a Reading Disorder, Disorder of written expression, and Borderline

Intellectual Functioning.  (Tr. 222).  His prognosis was unlikely to improve much

at all, especially in light of his physical problems.  (Tr. 222).  He also noted

Plaintiff was not capable of managing his personal funds in a competent manner.

(Tr. 223).  Dr. Levenstein opined Plaintiff: (1) had slight limitations in

understanding, remembering, and carrying out short and simple instructions; (2)

had moderate limitations in making judgments on simple work-related decisions;

(3) had extreme limitations in understanding, remembering, and carrying out

detailed instructions; (4) had no limitations with responding appropriately to

supervision, co-workers or work pressures in a work setting; and (5) had

limitations with reading and writing with the effect of rendering him close to

illiterate.  (Tr. 225-226).

On March 25, 2013, Monica Yeater, Psy.D., completed a Psychiatric

Review Technique.  (Tr. 52).  She opined, based on the record, that for Listing

12.02, Organic Mental Disorders, Plaintiff had: (1) mild restriction of activities of daily living and in maintaining social functioning; (2) moderate difficulties in maintaining concentration, persistence, or pace; and (3) no repeated episodes of decompensation, each of extended duration.  (Tr. 52).  Dr. Yeater also completed a Mental Residual Functional Capacity Assessment, in which she opined Plaintiff was: (1) moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances; (2) was limited to unskilled work; and (3) had no social interaction or adaptive limitations.  (Tr. 56-57).

On March 27, 2013, Dilip S. Kar, M.D., completed a Physical Residual Functional Capacity assessment based on the record.  (Tr. 54-56).  He opined that Plaintiff: (1) could occasionally lift and/ or carry up to twenty (20) pounds and frequently lift and/ or carry up to ten (10) pounds; (2) could stand and/ or walk and sit for six (6) hours in an eight (8) hour workday; (3) should avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; and (4) should avoid all exposure to hazards such as machinery and heights.  (Tr. 54-55).

On May 3, 2013, Plaintiff had an appointment with James Owens, M.D. for

hypertension, shortness of breath on exertion, and paresthesias in his feet.  (Tr. 256).  It was noted that Plaintiff had slightly limited cognitive function.  (Tr. 257).

On May 24, 2013, Plaintiff had an appointment with James Owens, M.D. for Chronic Obstructive Pulmonary Disease and hypertension.  (Tr. 252).  It was noted that his blood pressure had improved, and that it was strongly suspected that Plaintiff had COPD.  (Tr. 252).  He also reported that he had been experiencing paresthesias in his feet.  (Tr. 252).

On June 12, 2013, Plaintiff had an appointment with John Alencherry, M.D. for a cough and dyspnea.  (Tr. 242).  A chest x-ray and pulmonary function tests were ordered.  (Tr. 243).

On June 12, 2013, Plaintiff underwent a chest x-ray.  (Tr. 241).  The impression was that Plaintiff had mild hyperinflation in his lungs.  (Tr. 241).

On July 19, 2013, Plaintiff underwent a Pulmonary Function Test.  (Tr. 245).  The impression was that Plaintiff had mild obstructive airway disease with no significant component of reversible bronchospasms and decreased oxygenation.  (Tr. 245).  Plaintiff was advised to cease smoking and comply with his inhaler treatment.  (Tr. 248).

On July 29, 2013, Plaintiff had a follow-up appointment with Dr. Alencherry.  (Tr. 247).  He was diagnosed with chronic obstructive pulmonary disease, and it was noted that he was still smoking cigarettes and was in poor

compliance with his inhalers.  (Tr. 247).

On September 30, 2013, Plaintiff had an appointment with James Owens, M.D. for bilateral leg and foot pain and hypertension.  (Tr. 249).  Plaintiff reported that he had some parethesias of his feet with burning at times and that he was still smoking cigarettes.  (Tr. 249).

On April 14, 2014, Plaintiff had an appointment with Dr. Alencherry for follow-up of COPD and cough and shortness of breath that Plaintiff described as worsening.  (Tr. 264).  It was also noted that Plaintiff was poorly compliant with treatment for his COPD.  (Tr. 264).  His physical examination was normal.  (Tr. 264-265).  Plaintiff was advised to quit smoking, and was scheduled for a follow-up in four (4) months.  (Tr. 265).  Plaintiff also underwent a chest x-ray which showed mild right pleural effusion and hyperinflation of the lungs.  (Tr. 267).

On April 16, 2014, Plaintiff underwent a venus Doppler of his bilateral lower extremities.  (Tr. 263).  The impression was that there was no evidence of a DVT in either lower extremity.  (Tr. 263).

On July 18, 2014, Anne Rowland, CRNP, completed a Pulmonary Residual Functional Capacity Questionnaire.  (Tr. 270).  She opined that due to his pulmonary symptoms, Plaintiff: had occasional interference with attention and concentration; was capable of low stress jobs; had an impairment that was stable on current treatment of ProAir inhaler and was expected to last at least twelve (12)

months; could walk half a city block without rest or severe pain; could sit for more than two (2) hours at a time and more than four (4) hours in an eight (8) hour workday; could stand for ten (10) minutes at one time and for less than two (2) hours in an eight (8) hour workday; needed to take fifteen (15) to twenty (20) minute breaks during an eight (8) work shift; could occasionally lift and carry up to ten (10) pounds, rarely lift and carry twenty (20) pounds, and never lift and carry fifty (50) pounds; could frequently twist and stoop, occasionally crouch and squat, rarely climb stairs, and never climb ladders; should avoid all exposure to cigarette smoke, perfumes, soldering fluxes, solvents and cleaners, fumes, odors, gases and chemicals; and should avoid even moderate exposure to extreme cold and heat, high humidity, wetness, and dust; and would likely be absent from work for about four (4) days per month.  (Tr. 270-273).  She noted that the earliest date the symptoms and limitations from the questionnaire applied was June 12, 2013.  (Tr. 273).

## STANDARD OF REVIEW

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, the court's review of the Commissioner's

findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those

findings are supported by "substantial evidence."  Id.; Mason v. Shalala, 994 F.2d

1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Factual findings which are supported by substantial evidence must be upheld.  42

U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where

the ALJ's findings of fact are supported by substantial evidence, we are bound by

those findings, even if we would have decided the factual inquiry differently.");

Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the

Secretary must be accepted as conclusive by a reviewing court if supported by

substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe

v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520,

1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  Pierce v. Underwood, 487 U.S. 552, 565

(1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);

Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has

been described as more than a mere scintilla of evidence but less than a

preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual

record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Further,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability and claims for disability insurance benefits.  See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy.  Id.  As part of step four, the Commissioner must determine the claimant's residual functional capacity.  Id.  If the claimant has the

16

residual functional capacity to do his or her past relevant work, the claimant is not disabled.  Id.  "The claimant bears the ultimate burden of establishing steps one through four."  Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

"At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. " Poulos, 474 F.3d at 92, citing Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004).

## ALJ DECISION

Initially, the ALJ determined that Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2012.  (Tr. 12).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from his alleged onset date of November 29, 2011.  (Tr. 12).

At step two, the ALJ determined that Plaintiff suffered from the severe[6] combination of impairments of the following: "Chronic Obstructive Pulmonary Disease (COPD), Emphysema, Right Eye Blindness and Borderline Intellectual Functioning (20 C.F.R. 404.1520(c))."  (Tr. 12).

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of section 1.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (Tr. 13-15).

At step four, the ALJ determined Plaintiff was capable of performing light work with limitations, stating the following:

---

6. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. § 404.921.  Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering.  Id.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

> After careful consideration of the entire record, the undersigned
> finds that, through the date last insured, [Plaintiff] has the
> [RFC] to perform light work as defined in 20 CFR
> 404.1567(b). [Plaintiff] was capable of occasionally climbing,
> balancing, stooping, kneeling, crouching, and crawling.
> [Plaintiff] was required to avoid concentrated exposure to
> temperature extremes, high humidity, fumes, gases and dust.
> [Plaintiff] was required to avoid work at unprotected heights.
> [Plaintiff] was prohibited from operating a motor vehicle.
> [Plaintiff] was capable of performing work that requires only
> occasional depth perception, color vision and peripheral vision
> accommodations. [Plaintiff was capable of performing routine,
> repetitive 1 and 2 step tasks. [Plaintiff] was capable of handling
> occasional workplace changes and occasional decision-making.
> [Plaintiff] was capable of performing jobs that do not require
> reading.

(Tr. 15-21).

At step five of the sequential evaluation process, the ALJ determined that,

given Plaintiff's RFC, he was unable to perform past relevant work, but that given

his age, education, work experience, and RFC, there were jobs that existed in

significant numbers in the national economy that [Plaintiff] could perform for both

aforementioned RFC time periods.  (Tr. 21-22).

Thus, the ALJ concluded that Plaintiff was not under a disability as defined

in the Social Security Act at any time from November 29, 2011 through the date

last insured.  (Tr. 22).

## **DISCUSSION**

On appeal, Plaintiff alleges that: (1) the ALJ erred in determining Plaintiff's

peripheral neuropathy to be non-severe; (2) the ALJ erred in his RFC determination by not including a stand/walk limitation; (3) the ALJ erred in the weight he assigned to the opinion evidence; (4) the ALJ erred in determining Plaintiff's credibility; and (5) the Commissioner failed to sustain her burden of establishing that there is other work in the national economy Plaintiff could perform.  (Doc. 11, pp. 11-32).  Defendant disputes these contentions.  (Doc. 15, pp. 16-35).

### 1.   Step Two

Plaintiff argues that the ALJ erred in determining Plaintiff's peripheral neuropathy to be non-severe in violation of Social Security Regulation ("SSR") 96-3p because this impairment was more than a slight abnormality that had more than a minimal effect on his ability to do basic work activities.  (Doc. 11, pp. 11-13).

Step Two "'is a threshold analysis that requires [a claimant] to show that he has one severe impairment.'"  Traver v. Colvin, 2016 U.S. Dist. LEXIS 136708, at *29 (M.D. Pa. Oct. 3, 2016) (Conaboy, J.) (citing Bradley v. Barnhart, 175 F.App'x 87 (7th Cir. 2006)).  SSR 96-3p states that an impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities."  SSR 96-3p.  An impairment is not severe if it is a slight abnormality that has no more than a minimal effect on the Plaintiff's ability to do

basic work activities.  Id.  The United States Court of Appeals for the Third

Circuit has held that as long as the ALJ finds at least one (1) impairment to be

severe at Step Two, that step is resolved in Plaintiff's favor, the sequential

evaluation process continues, and any impairment that is found to non-severe is

harmless error because the ALJ still has to consider all impairments, both severe

and non-severe, in the RFC analysis.  See 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2); see also Salles v. Commissioner of Social Security, 229 F. App'x

140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the plaintiff's] favor at

Step Two, even if he had erroneously concluded that some of her other

impairments were non-severe, any error was harmless." (citing Rutherford v.

Barnhart, 399 F.3d 546, 553 (3d Cir. 2005))); Popp v. Astrue, 2009 U.S. Dist.

LEXIS, *4 (W.D. Pa. April 7, 2009) ("The Step Two determination as to whether

Plaintiff is suffering from a severe impairment is a threshold analysis requiring the

showing of only one severe impairment . . . In other words, as long as a claim is

not denied at Step Two, it is not generally necessary for the ALJ to have

specifically found any additional alleged impairment to be severe.") (citations

omitted).

     In the case at hand, the ALJ found several of Plaintiff's impairments to be

severe at Step Two, and thus resolved this step in Plaintiff's favor and continued

the sequential evaluation process.  (Tr. 12).  The ALJ completed all five (5) steps

of the sequential evaluation process, and in the RFC section, accounted for the

limitations caused by Plaintiff's peripheral neuropathy as the ALJ limited Plaintiff

to occupations that involved only occasional climbing, balancing, stooping,

kneeling, crouching, and crawling, that required him to avoid work at unprotected

heights, and that prohibited him from operating a motor vehicle.  (Tr. 15-21).   As

such, because the sequential evaluation process continued past Step Two and

because the ALJ took all of Plaintiff's impairments, both severe and non-severe,

into account when determining his RFC, substantial evidence supports the ALJ's

decision at Step Two, and the decision will not be disturbed on appeal based on

this assertion.

### 2.    Residual Functional Capacity Assessment

Plaintiff asserts that the ALJ erred in the RFC determination because the

ALJ did not include standing/ walking limitations that are implied within the light

work category.  (Doc. 11, pp. 15-16).  Plaintiff supports this assertion with the fact

that Dr. Khalid opined that Plaintiff could only stand/ walk for one (1) hour or less

in an eight (8) hour workday and Ms. Rowland opined that Plaintiff could only

stand/ walk for two (2) hours or less in an eight (8) hour workday due to COPD.

(Id.).

According to 20 C.F.R. § 404.1567(b), light work:

> involves lifting no more than 20 pounds at a time with frequent

> lifting or carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing
> and pulling or arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have
> the ability to do substantially all of these activities.

See 20 C.F.R. § 404.1567(b), Light Work.  "Light work generally requires 'a good

deal of walking or standing' . . . 'for a total of approximately 6 hours of an 8-hour

workday.'"  Michaels v. Colvin, 621 Fed. Appx. 35, 12 (2d Cir. 2015) (citing SSR

83-10, 1983 SSR LEXIS 30, at *13).  However, SSR 83-10 has been interpreted to

mean that this six (6) hour benchmark for standing and/or walking applies to a full

range of light work.  Lackey v. Colvin, 2013 U.S. Dist. LEXIS 64647, at *8-9

(W.D. Pa. May 7, 2013) ("Plaintiff misinterprets SSR 83-10, 1983 LEXIS 30 as

precluding any light work for an individual who cannot stand or walk for 6 hours

of an 8-hour work day when in fact that ruling only provides that 'the full range of

light work requires standing or walking, off and on, for a total of approximately 6

hours out of an 8-hour work day.'  Thus, while it is true that plaintiff is not able to

perform the full range of light work, the ALJ did not so find.  Instead, based on the

medical evidence, the ALJ determined that plaintiff can stand and/ or walk up to 4

hours of an 8-hour day, and then relied upon testimony from a vocational expert

indicating that there are jobs at the light exertional level which an individual who

is limited to standing and/or walking 4 hours in an 8-hour workday nevertheless

can perform.  Accordingly, the court is satisfied that the ALJ's residual functional

capacity finding that plaintiff can perform less than the full range of light work is

consistent with SSR 83-10, 1983 LEXIS 30 and the regulations and otherwise is

supported by the record.").  Thus, the six (6) hour benchmark for light work is

applicable only in cases in which an ALJ determines that a claimant can perform a

full range of light work.

In the case at hand, in response to the ALJ's hypothetical question that

limited Plaintiff to standing and/ or walking less than one (1) hour in an eight (8)

hour workday, the VE responded that there were still jobs present in significant

numbers in the national economy at the light exertion work level that Plaintiff

could perform, including, potato chip sorter, stuffer, and bakery worker.  (Tr. 43).

Furthermore, with regards to Ms. Rowland's opinion, she stated that her

opinion only applied to the time period from June 12, 2013 and forward.  (Tr. 20,

273).  Thus, her opinion regarding Plaintiff's limitations in standing/ walking did

not include the relevant time period to be taken into account in determining

Plaintiff's RFC.  With regards to Dr. Khalid's opinion, as noted by the ALJ, there

was no medical evidence regarding the relevant time period to support Dr.

Khalid's conclusion that Plaintiff could only walk/ stand for one (1) hour or less in

an eight (8) workday because Plaintiff's COPD had not advanced, which is

evident in Dr. Khalid's own notes that Plaintiff had good air movement in his

24

bilateral lungs, that his lungs were clear to auscultation, and that Plaintiff had slight wheezing.  (Tr. 17-18, 193, 202).  His pulmonary function test in early December 2012 noted that Plaintiff had normal spirometry with normal lung volumes and diffusing capacity.  (Tr. 18, 206).  Dr. Khalid also noted that, with regard to Plaintiff's peripheral neuropathy, Plaintiff walked with a normal gait, and had normal strength and stability throughout his extremities.  (Tr. 17-18, 193). Additionally, the state agency physician Dr. Kar, who examined the entire record and whose opinion was given significant weight by the ALJ, opined that Plaintiff was capable of standing and/ or walking for six (6) hours or more based on these aforementioned benign examination findings.  (Tr. 18, 54-56).  Thus, for the relevant time period of the alleged onset date of November 29, 2011 through the date last insured of December 31, 2012, there was no medical evidence that Plaintiff was as limited in standing/ walking as opined by Dr. Khalid.

As such, because the ALJ did not determine that Plaintiff could perform a full range of light work, but rather could perform a more restrictive form of light work with the aforementioned restrictions, because the ALJ relied on the VE's response to a hypothetical that included a standing/ walking limitation of one (1) hour or less in an eight (8) hour workday, and because the medical evidence does not support the opinions of Dr. Khalid and Ms. Rowland that limited Plaintiff's amount of walking and/ or standing, the ALJ's RFC determination is supported by

substantial evidence and will not be disturbed on appeal based on this assertion.

### 3.   **Opinion Evidence**

Plaintiff next asserts that the ALJ erred in evaluation the opinions rendered by Dr. Khalid, Ms. Rowland, Dr. Levenstein, Dr. Kar, and Dr. Yeater.  (Doc. 15, pp. 17-24).

The preference for the treating physician's opinion has been recognized by the Third Circuit Court of Appeals and by all of the federal circuits.  See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000).  This is especially true when the treating physician's opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 CFR § 416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

However, when the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason."  Morales, 225 F.3d 316-18.  It is within the ALJ's authority to determine which medical opinions he rejects and accepts, and the weight to be given to each opinion.  20 C.F.R. § 416.927.  The ALJ is permitted to give great weight to a

medical expert's opinion if the assessment is well-supported by the medical evidence of record.  See Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 961 (3d Cir. 2006) (holding that there was substantial evidence to support the ALJ's RFC determination that the plaintiff could perform light work, even though this determination was based largely on the opinion of one medical expert, because the medical expert's opinion was supported by the medical evidence of record); Chandler v. Commissioner of Social Security, 667 F.3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records . . . '[t]he law is clear . . . that the opinion of a treating physician does not bing the ALJ on the issue of functional capacity' . . . state agent opinions merit significant considerations as well.") (citing Brown v. Astrue, 649, F.3d 193, 197 n.2 (3d Cir. 2011)); Baker v. Astrue, 2008 U.S. Dist. LEXIS 62258 (E.D. Pa. Aug. 13, 2008).

Regardless, the ALJ has the duty to adequately explain the evidence that he rejects or to which he affords lesser weight.  Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009).  "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000).

Regarding Dr. Khalid's opinion, Plaintiff argues that the ALJ erred in failing to apply the standing/ walking limitation to the RFC determination.  (Doc.

15, pp. 17-19).  For the reasons discussed in the preceding section above,

substantial evidence supports the ALJ's determination and the significant weight

he gave to this opinion.  Furthermore, according to the Third Circuit, "no rule or

regulation compels an ALJ to incorporate into an RFC every finding made by a

medical source simply because the ALJ gives the source's opinion as a whole

'significant' weight."  Wilkinson v. Commissioner of Social Security, 558 F.

App'x 254, 256 (3d Cir. 2014).

Regarding Ms. Rowland's opinion, Plaintiff asserts that the ALJ failed to

apply SSR 83-20 when evaluation this opinion.  (Doc. 15, pp. 19-21).  The ALJ

gave Ms. Rowland's opinion no weight whatsoever because it was limited to the

time period of June 12, 2013 forward.  (Tr. 20, 273).

SSR 83-20 states the following:

> In some cases, it may be possible, based on the medical
> evidence to reasonably infer that the onset of a disabling
> impairment(s) occurred some time prior to the date of the first
> recorded medical examination, e.g., the date the claimant
> stopped working.  How long the disease may be determined to
> have existed at a disabling level of severity depends on an
> informed judgment of the facts in the particular case.  This
> judgment, however, must have a legitimate basis.

(Id. at 20).  Plaintiff argues that there was evidence that Plaintiff had the same

limitations from COPD in December 2012 that he had when Ms. Rowland

28

completed her assessment in 2013 based on Plaintiff's self-reported symptoms of shortness of breath.

However, as noted, Plaintiff's examinations showed that Plaintiff had good air movement in his bilateral lungs, that his lungs were clear to auscultation, and that Plaintiff had slight wheezing. (Tr. 17-18, 193, 202). His pulmonary function test in early December 2012 noted that Plaintiff had normal spirometry with normal lung volumes and diffusing capacity. (Tr. 18, 206). This objective medical evidence therefore does not invoke the application of SSR 83-20 because it is not possible, based on the medical evidence, to reasonably infer that the onset of a COPD and its limitations occurred before the date provided by Ms. Rowland in her opinion.

Regarding Dr. Levenstein's opinion, Plaintiff argues that the ALJ erred in giving this opinion limited weight because his explanation for doing so is "vague and unsupported" and because, as a consultative examiner, under SSR 96-6, the ALJ should have given this opinion significant weight. (Doc. 15, pp. 21-24). However, the ALJ explained that he gave this opinion limited weight because it was inconsistent with and unsupported by the objective medical evidence and Dr. Levenstein's own examination findings. (Tr. 19). According to 20 C.F.R. § 404.1527(c)(4), more weight will be given to opinions that are consistent with the

record as a whole.  The ALJ is permitted to give great weight to a medical expert's

opinion if the assessment is well-supported by the medical evidence of record.

See Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 961 (3d Cir. 2006).  When

it is not supported, the ALJ is under no obligation to give this opinion significant

weight.  In the case at hand, the ALJ explained that, "Dr. Levenstein's assessment,

specifically that [Plaintiff] is close to being functionally illiterate, is inconsistent

with the objective findings noted throughout the medical evidence of record,

including Dr. Khalid's finding that [Plaintiff] was able to read the words 'ask your

doctor if it's time for.'  Further, the extreme restrictions noted within Dr.

Levenstein's assessment, including the GAF score of 40, are inconsistent with and

unsupported by the objective clinical findings noted throughout the medical

evidence of record, including Dr. Levenstein's own findings, which indicate that

[Plaintiff] is alert and oriented and he is able to complete serial 7s with only one

error."  (Tr. 19).  As such, the weight the ALJ gave to Dr. Levenstein's opinion is

supported by substantial evidence because it is inconsistent with and unsupported

by the medical record as sufficiently explained by the ALJ.

Regarding the opinions of the state agency physicians, namely Dr. Kar and

Dr. Yeater, Plaintiff asserts that the ALJ erred giving these opinions significant

weight because they are non-examining, non-treating physicians.  (Doc. 15, pp.

24-25).  Initially, it is noted that there was no opinion rendered by a treating

physician, but rather only by consultative examiners.  Furthermore, as stated, even

if there were a treating physician opinion present, when the treating physician's

opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ

may choose whom to credit in his or her analysis, but "cannot reject evidence for

no reason or for the wrong reason."  Morales, 225 F.3d 316-18.  It is within the

ALJ's authority to determine which medical opinions he rejects and accepts, and

the weight to be given to each opinion.  20 C.F.R. § 416.927.  The ALJ is

permitted to give great weight to a medical expert's opinion if the assessment is

well-supported by the medical evidence of record.  See Sassone v. Comm'r of Soc.

Sec., 165 F. App'x 954, 961 (3d Cir. 2006) (holding that there was substantial

evidence to support the ALJ's RFC determination that the plaintiff could perform

light work, even though this determination was based largely on the opinion of

one medical expert, because the medical expert's opinion was supported by the

medical evidence of record); Chandler v. Commissioner of Social Security, 667

F.3d 356, 361 (3d Cir. 2011) ("Although treating and examining physician

opinions often deserve more weight than the opinions of doctors who review

records . . . '[t]he law is clear . . . that the opinion of a treating physician does not

bing the ALJ on the issue of functional capacity' . . . state agent opinions merit

significant considerations as well.") (citing <u>Brown v. Astrue</u>, 649, F.3d 193, 197

n.2 (3d Cir. 2011)); Baker <u>v. Astrue</u>, 2008 U.S. Dist. LEXIS 62258 (E.D. Pa. Aug.

13, 2008).

In the case at hand, the ALJ gave the opinions of the state agency physicians

significant weight because they were both consistent with and supported by the

objective medical findings noted throughout the medical evidence of record.  (Tr.

18-19).  As such, the ALJ sufficiently explained why he was giving these opinions

great weight.

For the reasons stated, substantial evidence supports the weight the ALJ

afforded to the medical opinions, and the decision of the ALJ will not be disturbed

on appeal based on this assertion.

### 4.    Credibility Determination

Plaintiff asserts the ALJ erred in determining Plaintiff was not fully credible

in violation of 20 C.F.R. § 404.1529 ( c) and SSR 96-7p.  (Doc. 15, pp. 25-28).

As part of Step Four of the sequential evaluation process, once an ALJ

concludes that there is a medical impairment that could reasonably cause the

alleged symptoms, "he or she must evaluate the intensity and persistence of the

pain or symptom, and the extent to which it affects the individual's ability to

work." <u>Hartranft</u>, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)).  This

"requires the ALJ to determine the extent to which a claimant is accurately stating

the degree of pain or the extent to which he or she is disabled by it."  <u>Id.</u>  In

evaluating the intensity and persistence of a claimant's symptoms, an ALJ should

consider: (1) the claimant's history; (2) medical signs and laboratory findings; (3)

medical opinions; and (4) statements from the claimant, treating and non-treating

sources, and other persons about how the claimant's symptoms affect him/her.

<u>See</u> 20 C.F.R. § 404.1529.  Importantly, "[a]n individual's statements about the

intensity and persistence of pain or other symptoms or about the effect the

symptoms have on his or her ability to work may not be disregarded solely

because they are not substantiated by objective medical evidence."  1996 SSR

LEXIS 4 (1996); 20 C.F.R. § 404.1529(c)(2).

    "Generally, 'an ALJ's findings based on the credibility of the applicant are

to be accorded great weight and deference, particularly since an ALJ is charged

with the duty of observing a witness's demeanor and credibility.'"  <u>Fell v. Astrue</u>,

2013 U.S. Dist. LEXIS 167100, *29 (M.D. Pa. 2013) (Conaboy, J.) (quoting

<u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997));

<u>Frazier v. Apfel</u>, 2000 U.S. Dist. LEXIS 3105 (E.D. Pa. Mar. 6, 2000).  "'The

credibility determinations of an administrative judge are virtually unreviewable on

appeal." Hoyman v. Colvin, 606 Fed. App'x 678, 681 (3d Cir. 2015) (citing

Beiber v. Dep't of the Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).

Social Security Ruling 96-7p gives the following instructions in evaluating

the credibility of the claimant's statements:

> In general, the extent to which an individual's statements about
> symptoms can be relied upon as probative evidence in
> determining whether the individual is disabled depends on the
> credibility of the statements.  In basic terms, the credibility of
> an individual's statements about pain or other symptoms and
> their functional effects is the degree to which the statements
> can be believed and accepted as true.  When evaluating the
> credibility of an individual's statements, the adjudicator must
> consider the entire case record and give specific reasons for the
> weight given to the individual's statements.

SSR 96-7p.  "In particular, an ALJ should consider the following factors: (1) the

plaintiff's daily activities; (2) the duration, frequency and intensity of the

plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication taken to alleviate the

symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any

measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's

prior work record; and (8) the plaintiff's demeanor during the hearing." Jury v.

Colvin, 2014 U.S. Dist. LEXIS 33067, *33 (M.D. Pa. 2014) (Conner, J.) (citing 20

C.F.R. § 404.1529(c)(3)).

In assessing Plaintiff's credibility in this case, the ALJ stated:

> The undersigned does not find [Plaintiff] to be entirely credible regarding the extent and severity of his impairments and limitations during the relevant period ending on the date last insured.

(Tr. 20).  The ALJ discussed the medical record highlights in support of his credibility determination, including, but not limited to, the following: (1) Plaintiff did not receive treatment aside from consultative examinations; (2) normal pulmonary function testing and examination findings; (3) ambulation with a normal gait and without an assistive device; (4) normal strength and stability throughout his extremities; (5) ability to read sentences from a pamphlet; (6) failure to quit smoking; and (7) failure to use eye drops for glaucoma.  (Tr. 20).  In terms of Plaintiff's activities of daily living, the ALJ noted that Plaintiff testified that he was able to drive, perform personal care duties, perform some household chores, go out alone, shop for groceries, handle a saving account, follow oral instructions, and get along well with others.  (Tr. 20-21).  Thus, the ALJ considered the aforementioned <u>Jury</u> factors in his analysis, including daily activities, treatment and measures used to relieve symptoms, and the duration, frequency and intensity of Plaintiff's symptoms, which is evident in the resulting restrictive RFC finding.

Upon review of the record and the ALJ's credibility determination, it is determined that there is substantial evidence to support the ALJ's credibility finding of Plaintiff.  The ALJ is correct that there were enough inconsistencies in the record regarding Plaintiff's self-reported limitations that weakened his credibility, including the benign examination findings, lack of evidence for medication side-effects, and Plaintiff's self-reported activities of daily living. Furthermore, the ALJ did not find Plaintiff to be not credible, but only not entirely credible.  (Tr. 20).  The restrictive RFC finding is evidence that ALJ found Plaintiff credible to some degree, albeit not completely, as the ALJ concluded Plaintiff could perform only a limited range of light work based, in part, on his subjective complaints.  (Tr. 15-21).  As such, because the ALJ's credibility determination is to be accorded great deference and is supported by substantial evidence, the ALJ's decision will not be disturbed on appeal based on Plaintiff's assertion.

### 5.   <u>Step Five</u>

Lastly, Plaintiff argues that the ALJ erred in not applying rule 202.09 of the medical-vocational guidelines (grids) at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (Doc. 15, pp. 28-32).  However, this rule is not applicable because Plaintiff is not unable to communicate in English nor is he illiterate.  As noted by the ALJ, Plaintiff

completed nine grades of public school education, has no record that he was

unable to read, was able to drive and navigate using road signs, testified that he

used glasses to read small print, completed the disability paperwork by himself,

and was able to read phrases from pamphlets during examinations.  (Tr. 21, 30, 33,

35, 38, 142).   Thus, the ALJ properly applied grid rule 202.11, which reasoned a

finding a "not disabled."  (Tr. 22).

Furthermore, to the extent that Plaintiff assert that the ALJ's hypothetical

question did not adequately account for his visual impairments, it is noted that the

ALJ included visual limitations in the RFC determination.  (Tr. 15).  The ALJ

limited Plaintiff to jobs that require no driving or unprotected heights work and

only occasional dept perception, color vision, and peripheral vision.  (Tr. 15).

As such, substantial evidence supports the ALJ's Step Five finding, and the

decision will not be disturbed on appeal based on this assertion.

## CONCLUSION

Based upon a thorough review of the evidence of record, the Court finds

that the Commissioner's decision is supported by substantial evidence.  Therefore,

pursuant to 42 U.S.C. § 405(g), the appeal will be denied, the decision of the

Commissioner will be affirmed, and judgment will be entered in favor of

Defendant and against Plaintiff.

A separate Order will be issued.

**Date**: March 3, 2017

/s/ **William J. Nealon**
**United States District Judge**